UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SHANNON LARIVE,<br><br>Defendant. | 5:20-CR-50057<br><br>ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE AND MOTION FOR SENTENCE REDUCTION |

Defendant Shannon Larive ("Larive") seeks compassionate release under 18 U.S.C.

§ 3582(c)(1)(A), and a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). For the following

reasons the motions are granted.

**BACKGROUND**

This case arises out of a string of armed robberies (one attempted) that occurred in March

of 2020 at casinos located in Rapid City, South Dakota. On July 23, 2020, Larive was charged in

all nine counts of an Indictment with Interference with Commerce by Robbery in violation of 18

U.S.C. §§ 1951 and 2, Use and Brandishing of a Firearm During the Commission of a Crime of

Violence in violation of 18 U.S.C. §§ 924(c)(l)(A)(ii), (iii) and 2, and Possession of a Firearm by

a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (Doc. 1.)

On November 18, 2020, Larive pleaded guilty to one count of Interference with Commerce

by Robbery (Count 3) and one count of Use and Brandishing of a Firearm During the Commission

of a Crime of Violence (Count 4). The other seven counts were dismissed as part of the plea

agreement. (Doc. 44.)

On July 19, 2021, Judge Jeffrey L. Viken sentenced Larive to 60 months' imprisonment

on Count 3 and 84 months on Count 4, to run consecutively. (Doc. 117.) Larive did not appeal

1

his sentence. He is currently serving his sentence at FCI Marianna, with an estimated release date of February 14, 2031.

Larive filed a pro se motion for compassionate release on October 28, 2024. (Doc. 131.) He filed pro se supplements to his motion on October 29, 2024 (Doc. 133), and on November 13, 2024 (Doc. 139.) Larive argued that there are extraordinary and compelling reasons for release because he was assaulted by another inmate while in BOP custody despite telling BOP staff that he was in danger and asking for help, he is the only available caregiver for his father, and his help is needed to support his mother. (Doc. 132, pp. 1-2.)

On January 28, 2025, a lawyer with the Federal Public Defender's Office gave notice of intent to submit supplemental briefing in support of Larive's motion for compassionate release. Requests for extensions of time were granted to allow counsel to investigate Larive's claims. The supplemental brief and supporting documents were filed on July 2, 2025. (Doc. 163.) The supplemental documents were filed under seal due to the confidential nature of the information contained therein. In the supplemental brief, Larive argues that he is entitled to compassionate release because of the assault and the troubling consequences he has suffered for being a known victim and a cooperating witness while in prison. The advancing age and deteriorating health of Larive's father is also mentioned as a factor contributing to the extraordinary and compelling reasons for compassionate release.

Records from the Bureau of Prisons ("BOP") documenting Larive's health conditions, medical care, disciplinary record, and education have been submitted. (Docs. 146 & 159.)

At the time of the assault in September of 2022, Larive was confined at the Metropolitan Correctional Center in Chicago, Illinois (MCC Chicago). Larive's assault is substantiated by his BOP medical records and in the documents submitted by his lawyer, and there is no reason for the

Court to doubt that the assault occurred.[1] The assault gave rise to a criminal case against the perpetrator and a civil case by Larive against the United States and a BOP correctional officer, both of which are pending in the United States District Court for the Northern District of Illinois. The criminal case has been pending since November of 2022, and the trial is scheduled for October 6, 2025. *See United States v. Robinson*, No. 1:22-cv610, N.D. Ill., Doc. 157. The civil case is stayed pending resolution of the criminal case.

The government has not obtained BOP investigative reports from the assault, and it is unable to comment on the assault or any of the experiences Larive describes as resulting from the assault.[2] (Doc. 170, p. 10.)

On July 18, 2025, the Probation Office prepared a Memorandum to this Court in which it stated that Larive is eligible for consideration of a sentence reduction under the retroactive application of Amendment 821 to the United States Sentencing Guidelines.

The government opposes Larive's motion for compassionate release and his alternative motion for a sentence reduction. (Docs. 170 & 171.)

Larive has filed reply briefs in support of his motions. (Docs. 177 & 179.)

## DISCUSSION

### A. Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A)

Section 3582, as amended by the First Step Act of 2018, provides that a court may reduce a sentence, after considering the factors set forth in 18 U.S.C. § 3553(a), for "extraordinary and compelling reasons," if the defendant has fully exhausted all administrative remedies with the

---

[1] To protect Larive's privacy and confidential information, the details of the alleged assault will not be set forth in this Order.

[2] Larive's lawyer in this proceeding also was unable to obtain the BOP investigative reports and other documentation relating to the assault. (Doc. 163, p. 3 n. 2.) Counsel's April 15, 2025 FOIA request remains pending. (*Id.*)

BOP, and if the court finds that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). There is no dispute that Larive has exhausted his administrative remedies.

### 1. Extraordinary and Compelling Circumstances

The Sentencing Commission's policy statement applicable to compassionate release is found in section 1B1.13 of the United States Sentencing Guidelines. *See* U.S.S.G. § 1B1.13. The policy statement sets forth a list of extraordinary and compelling circumstances, or a combination thereof, that can warrant a reduction in sentence, including: (1) the defendant's medical circumstances, including a terminal illness or serious medical or physical condition that substantially diminishes the defendant's ability to provide self-care or requires long-term or specialized medical care; (2) the defendant's age, if the defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health, and has served at least 10 years or 75 percent of his term of imprisonment; (3) certain family circumstances, such as the death or incapacitation of the caregiver of defendant's child, or where the defendant would be the only available caregiver for an incapacitated spouse or parent; (4) where the defendant was a victim of abuse while in custody that was committed by any individual who had custody or control over the defendant, such as a correctional officer or an employee or contractor of the BOP; (5) any other reasons that "are similar in gravity" to the above-described circumstances; and (6) in the event of an "unusually long sentence," the defendant has served at least 10 years of the term of imprisonment, and there has been a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) that would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(1)-(6). With respect to rehabilitation, the policy statement states that a

defendant's rehabilitation, by itself, is not an extraordinary and compelling reason for compassionate release, but "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d).

As grounds for his compassionate release request, Larive relies primarily on the assault that occurred at MCC Chicago in September 2022.

In order to establish extraordinary and compelling reasons for compassionate release under § 1B1.13(b)(4), a defendant must establish that, while in custody, he was a victim of (1) sexual abuse involving a sexual act, as defined in 18 U.S.C. § 2246(2); or (2) physical abuse resulting in serious bodily injury, as defined in the Commentary to § 1B1.1. *See* U.S.S.G. § 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

Larive acknowledges that he cannot meet all of the requirements of § 1B1.13(b)(4) because the alleged assault was committed by another prisoner and not a correctional officer, and the assault has not resulted in a conviction, finding, or admission of liability in a civil case or a finding in an administrative case. Therefore, Larive cites the "catch-all" provision of USSG § 1B1.13(b)(5), which states:

> **(5) Other Reasons**.--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

5

U.S.S.G. § 1B1.13(b)(5).  Larive argues that the unique circumstances of his assault and the aftermath as a victim and cooperating witness in BOP custody are "similar in gravity to [the extraordinary and compelling reasons] described in paragraphs (1) through (4)" of USSG § 1B1.13(b).  (Doc. 163, p. 14.)

Larive spells out the factors that he believes, in combination, amount to extraordinary and compelling reasons for a sentence reduction under the catch-all provision in USSG §1B1.13(b)(5).  (Doc. 163, pp. 15-19.)  These include that he has: (1) been violently assaulted in prison after warning correctional officers of the threatened assault and they failed to intercede; (2) been harassed since the assault by other prisoners; (3) been threatened with physical harm by other prisoners and even beaten by other inmates at a county jail; (4) incurred disciplinary action when he refused work assignments to avoid being around other prisoners; (5) violated prison rules to pacify prisoners who were threatening him, and he was disciplined as a result; (6) isolated himself in the special housing unit "SHU" to avoid harassment and assaults; (7) been required to return to the scene of the assault (to testify before the grand jury in the alleged perpetrator's criminal case) where he encountered the same correctional officer who failed to respond to his pleas for help.  In summary, Larive alleges he was not only violently assaulted, but he also "has been marked as a 'rat,' and has suffered harassment, degrading treatment, threats, and physical assault" as a result.  (Doc. 163, p. 18.)  As mentioned above, the government is unable to respond to Larive's declarations regarding his experience of assaultive conduct and harassment because the investigative reports have not been made available, but the Court has no reason to doubt Larive's assertions.

The Court concludes that the combination of harsh conditions suffered by Larive in prison is similar in gravity to the circumstances described in paragraphs (1) through (4) of § 1B1.13(b),

and together they establish extraordinary and compelling circumstances under the "other reasons" provision of USSG § 1B1.13(b)(5).[3] *See, e.g.*, *United States v. Busby*, 2024 WL 3498161 (D. Nev. July 18, 2024) (holding that physical assault that left defendant with severe and permanent injuries qualified as an extraordinary and compelling reason under § 1B1.13(b)(4), and even if it did not qualify standing alone, the court would find extraordinary and compelling reasons under the "other reasons" provision in § 1B1.13(b)(5) when considered in combination with defendant's medical conditions, significant rehabilitation, and other alleged assaults).

Larive points out that the criminal case against the alleged perpetrator has been pending nearly three years, which he contends is an undue delay that would render a formal adjudication of the alleged assault unnecessary, as contemplated by USSG § 1B1.13(b)(4).[4] The civil case has

---

[3] Section 1B1.13(b)(3)(C) of the Sentencing Guidelines provides that "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" could qualify as an extraordinary and compelling circumstance. Though Larive's father has a heart condition and other medical problems, and receives social security disability benefits, Larive does not argue that his father is incapacitated within the meaning of USSG § 1B1.13(b)(3)(C). In fact, Larive admits that his father lives in his own home and takes care of his three young children (Larive's siblings). Larive's father likely would benefit from assistance, but there is no suggestion that Larive's father needs a caregiver or that Larive would be his only available caregiver. In addition, though Larive has provided information about his mother's poor health, the supplement does not add any updated information about his mother's condition or her need for Larive's care, and in his reply brief Larive states he does not intend to be his mother's caregiver. Simply put, Larive has not shown that his family circumstances are extraordinary or compelling reasons for a sentence reduction under § 1B1.13(b)(3).

In his reply brief, Larive clarifies that "his argument is that his father has significant medical problems and needs help supporting his minor children and that his mother (who he does not intend to be a caregiver for) needs support." (Doc. 179, p. 3.) For these reasons, Larive asserts that "his family circumstances contribute to a finding of extraordinary and compassionate reasons under § 1B1.13(b)(5)." The Court disagrees and concludes that Larive's family circumstances do not contribute to a finding of extraordinary and compelling reasons under § 1B1.13(b)(5).

[4] As set forth above, USSG § 1B1.13(b)(4) requires the alleged misconduct "be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," unless such proceedings are unduly delayed or the defendant faces imminent danger. *See* U.S.S.G. § 1B1.13(b)(4).

also been delayed by being stayed pending resolution of the criminal case. Because the Court

finds that Larive has established extraordinary and compelling circumstances under the catch-all

provision of USSG § 1B1.13(b)(5), the Court need not address whether the criminal and civil

proceedings have been unduly delayed under USSG § 1B1.13(b)(4).

### 2. Section 3553(a) Factors

If a court finds that extraordinary and compelling circumstances exist for a sentence

reduction under 18 U.S.C. § 3582(c)(1)(A), the court must consider the applicable factors set forth

in 18 U.S.C. § 3553(a). *See* 18 U.S.C. 3582(c)(1)(A). The Court concludes that the § 3553(a)

factors support a sentence reduction in this case.

18 U.S.C. § 3553(a) provides:

(a) **Factors to be considered in imposing a sentence.**--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(1)–(2).

Larive recognizes and does not minimize the seriousness of his armed robbery offenses.

Larive points out, however, that he was only 25 years old when he committed the offenses in

8

March of 2020.  His prior adult criminal convictions were for non-violent offenses. His disciplinary infractions while in BOP custody are likewise non-violent, and Larive plausibly explains how those infractions are "consistent with his struggles to avoid prison politics, protect his safety, and navigate prison life after reporting the [assault]" and testifying against the perpetrator. (Doc. 177, pp. 3-5.) The Court is aware of how inmates who cooperate with prison officials about other inmates or illegal activities can face isolation, threats, and even violence for their actions.

Larive asserts he has "made the most of his difficult time in prison." (Doc. 163, pp. 20 & 22.). The Court finds that Larive's rehabilitation while in prison has reduced his likelihood of reoffending and has increased the chances that he will become a productive member of society when he is released. Larive earned his GED in 2024, works in computer recycling, began the non-residential drug abuse treatment program and hopes to be considered for the residential drug abuse program (FDAP) soon. (*Id.*, p. 22.) He has completed courses in "brain health, career planning, resume writing, finance, small business, history, and more." (*Id.*) Larive points out that he has cooperated with authorities in the criminal prosecution of his attacker despite the negative consequences he has suffered, and under other circumstances his assistance could have led to a sentence reduction under USSG § 5K1.1 or Rule 35(b) of the Federal Rules of Criminal Procedure. (*Id.*, pp. 20-21.)

After careful review and consideration, the Court concludes that a reduced sentence for Larive would still promote respect for the law and provide just punishment for his offense. However, the Court will not reduce Larive's sentence to time served because that would fail to reflect the seriousness of his offense. The Court will reduce Larive's 84-month sentence on Count 4 to 76 months. The Court commends Larive for his positive conduct while in prison, and is

9

hopeful that Larive will continue to benefit from addiction and mental health treatment in prison, and from the programs designed to provide prisoners with job and life skills.

## B. Motion for Reduction in Sentence Under Amendment 821, Part A

Larive also requests a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the United States Sentencing Guidelines. (Doc. 165).

Ordinarily, a court may not modify a sentence once it has been imposed, but 18 U.S.C. § 3582 creates an exception for a term of imprisonment "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In such a situation, the court engages in the two-step procedure set forth in *Dillon v. United States*, 560 U.S. 817, 826–27 (2010). The Eighth Circuit recently instructed district courts on that procedure:

> The court first should determine the inmate's eligibility for a sentence modification and the inmate's amended guideline range. *Id.*; USSG § 1B1.10(b)(1). The court must then consider whether a reduction is warranted under the sentencing factors of 18 U.S.C. § 3553(a). *Dillon*, 560 U.S. at 821; 18 U.S.C. § 3582(c)(2); USSG § 1B1.10 comment. (n.1(B)(i)).

*United States v. Murry*, No. 24-1791, 2025 WL 2048713, at *1 (8th Cir. July 22, 2025). The court "may reduce the term of imprisonment" after considering the factors listed in 18 U.S.C. § 3553(a), "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

### 1. Eligibility for Relief Based on Pertinent Guideline Range

Amendment 821 to the Sentencing Guidelines includes § 4A1.1, which addresses status points a defendant received because the offense was committed while under any "criminal justice sentence," including imprisonment, probation, or supervised release. The provision reads as follows:

### § 4A1.1. Criminal History Category

The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.

(b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in subsection (a).

(c) Add 1 point for each prior sentence not counted in subsection (a) or (b), up to a total of 4 points for this subsection.

(d) Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under subsection (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

(e) Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

U.S.S.G. § 4A1.1.

Larive received a 2-point increase because he committed his offense while under a criminal justice sentence, based on convictions of possession of controlled substances. (Doc. 111.) Under Amendment 821, he would receive only a 1-point increase. In Larive's case this matters—the 2-point increase raised his criminal history category to VI, while if he received only a 1-point increase, his criminal history category would be V. The sentencing guideline range for offense level 17 with criminal history category VI is 51 to 63 months. With offense level 17 and criminal history category V, the guideline range is 46 to 57 months. Because application of the revised Section 4A1.1(e) "lowers the applicable guideline range" for Larive's offense of conviction, he is eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).

Larive was sentenced to 60 months on Count 3, interference with commerce by robbery, and the mandatory sentence of 84 months on Count 4 for use and brandishing a firearm during the

11

commission of a crime of violence. (Doc. 117). Larive asks the Court to reduce his 60-month sentence to 46 months, the bottom of his new guideline range. (Doc. 165, pp. 4-5.)

The government agrees that Larive is eligible for a sentence reduction due to the lower guideline range under the retroactive amendment, but the government argues that a reduction is not warranted after consideration of the § 3553(a) factors. (Doc. 171.)

### 2. Section 3553(a) Factors

District courts have "wide latitude" in weighing the § 3553(a) factors when exercising discretion to reduce a sentence under § 3582(c)(2). *See United States v. Alcantar Mercado*, No. 24-2590, 2025 WL 2026641, at *2 (8th Cir. July 21, 2025). This Court previously explained why the § 3553(a) factors support a sentence reduction for Larive pursuant to 18 U.S.C. § 3582(c)(1)(A), and for those same reasons the § 3553(a) factors support a reduction under § 3582(c)(2).

Judge Viken sentenced Larive to 60 months on Count 3, which is three months lower than the top of his pre-amendment guideline range of 51 to 63 months. Amendment 821 lowered Larive's guideline range to 46 to 57 months. The Court agrees with Judge Viken's assessment that a sentence of three months below the top of the guideline range is appropriate for Count 3, and Larive's sentence on Count 3 will be 54 months.

## CONCLUSION

**IT IS ORDERED**:

1. That the Motion for Compassionate Release Under First Step Act (Doc. 131) is granted, and Larive's sentence on Count 4 is lowered from 84 months to 76 months;

2. That the Motion for Reduction in Sentence Under Amendment 821, Part A to the United States Sentencing Guidelines (Doc. 165) is granted, and Larive's sentence on Count 3 is lowered from 60 months to 54 months; and

3.  That the probation office is directed to prepare an amended judgment sentencing Larive to a total sentence of 130 months in custody, based on 54 months in custody on Count 3, to run consecutively to a sentence of 76 months on Count 4.

DATED this 29ᵗʰ day of July, 2025.

BY THE COURT:

LAWRENCE L. PIERSOL
United States District Judge